[Cite as *State v. Allen*, 2016-Ohio-2742.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-14-1078

      Appellee                                   Trial Court No. CR0201401327

v.

Quincy Allen                                          **DECISION AND JUDGMENT**

      Appellant                                  Decided:   April 29, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Quincy Allen, appeals from his conviction, in the Lucas County

Court of Common Pleas, on one count of murder, with specifications and, one count of

participating in a criminal gang.  For the reasons outlined below, we affirm the conviction

but remand this matter to the trial court for the limited purpose of issuing a nunc pro tunc

sentencing entry.

{¶ 2} In the early morning hours of April 19, 2013, LaQuan Dunbar was shot to death in a Toledo, Ohio, gas station parking lot. Following an investigation into the incident, appellant, Quincy Allen, was indicted on two counts of murder and one count of participating in a criminal gang. A jury trial commenced on March 4, 2014.

## Trial

{¶ 3} The state introduced a taped interview with witness Marlon Powell, who was interviewed by Toledo Police Detective Jeffery Clark. Powell stated that he pulled into the gas station on April 19, 2013. As he exited his car, he got into a brief scuffle with two other men. Powell punched one of the men. He then encountered the murder victim and asked him if he wanted to fight. The victim declined. Powell stated he turned away from the victim and headed back to his car. He then heard a gunshot. When he turned around, he saw the victim on the ground and he saw appellant with a gun in his hand. Powell stated that appellant wanted to shoot a member of the Moody Manor Bloods street gang in retaliation for the death of his brother and because of a song the gang recorded in which they mocked appellant's brother.

{¶ 4} Latesha Riley testified that on the date in question, she was appellant's girlfriend. That night, appellant borrowed her car. He returned to her home at approximately 2:00 a.m. and told her that at the gas station, he hit someone in the head with a gun and the gun went off. He told her that he did not know if the person died.

{¶ 5} James Powell testified that he was a passenger in a blue Monte Carlo on the night of April 19, 2013. He and the driver of the car, Antonio Watson, arrived at the gas

2.

station before the shooting. He was inside the gas station when he heard a gunshot. He testified that he did not see the shooter or the victim. He and Watson immediately got back in the car. Appellant got into the backseat and the three drove away.

{¶ 6} Erica Elmore testified that in the early morning hours of April 19, 2013, she was stopped at a red light next to the gas station. Her passenger window was rolled down. She testified that she heard a group of people arguing. She specifically heard someone say "[F]uck Tae." She heard more arguing and then she heard a gunshot. She testified that people ran from the scene. Among the people she identified at the scene was appellant. She watched as he got into the blue Monte Carlo car that drove away. When she pulled into the gas station, she saw the victim on the ground.

{¶ 7} Toledo Police Detective Jason Lenhardt testified that he specializes in crime scene investigations. He reviewed the gas station's video surveillance tape from the night of the shooting. He identified state's exhibit No. 272 as a still photo taken from the tape showing appellant, at the gas station, holding a semi-automatic handgun.

{¶ 8} Toledo Detective William Noon testified he is assigned to the gang task force. The force of approximately 16 officers investigates criminal gang activity and attempts to identify known gang members. Detective Noon has been classified as a gang specialist as a result of his training with the Ohio Attorney General's office and he has testified in court as a "gang expert." He testified that there are 21 known gangs in the Toledo area. Many of the gangs are divided into sub sets often reflecting their street of residence. One of those gangs is known as the Southside Gangster Disciples.

3.

According to Noon, they are involved in homicides, felonious assaults, drug trafficking, robberies and, burglaries. They consider themselves part of a larger organization called "Folks." Their symbol is a pitchfork which members are known to emulate with their fingers. One of their main rivals is a gang called the Moody Manor Bloods.

{¶ 9} In court, Detective Noon identified appellant as a known member of the Southside Gangster Disciples. Specifically, he belongs to a sub set of the Disciples known as the Belmont Boys. Detective Noon testified that he knows this based on intelligence the task force has gathered and the fact that appellant has the word Belmont tattooed under his left eye. Detective Noon also pointed to a photograph of appellant posing with another known Southside Gangster Disciple member, Fred Watson, who can be seen making the pitchfork symbol with his hand. Watson was later killed in a gang related homicide. Noon identified state's exhibit No. 276 as a portion of appellant's facebook page displaying a tribute to Watson. Noon explained that in gang terminology, a "tribute" usually consists of a collage of photos of a fallen gang member with the words "rest in peace" written underneath. Noon also recounted a recent gang fight that took place in a bar between the Disciples and Bloods. Appellant was present and was ultimately convicted of misdemeanor assault. Noon testified that, along with another known member of the Southside Gangster Disciples, appellant participated in a felony burglary for which he was convicted of in 2011.

{¶ 10} Detective Noon testified that he investigated the 2012 murder of appellant's brother, Deonta ("Tae") Allen. Traquawn Gibson, a member of the Moody

4.

Manor Bloods, was convicted of the murder. The state introduced exhibit No. 282(A) which was a recorded song entitled "Wooty Woo La La La." The song was found on a free website and was recorded by members of the Moody Manor Bloods. Detective Noon testified that the song lyrics reference various street names located in the Moody Manor Bloods territory. The song includes the term "Hot Boy" which was Traquawn Gibson's street name. Noon also testified that he believes the song specifically references the murder of appellant's brother with the words "Fuck Tae" in an effort to brag about killing appellant's brother. Noting that the victim was a member of the Moody Manor Bloods, Noon opined that appellant's motive was to avenge the death of his brother and to retaliate against the song he felt mocked his brother.

{¶ 11} On March 10, 2014, the jury found appellant guilty on one count of murder and one count of participating in a criminal gang. He was sentenced to a term of 15 years to life for murder, two three year terms for the specifications and seven years for participating in a criminal gang. The sentences were ordered to be served consecutively. Appellant now appeals setting forth the following assignments of error:

> I. The trial court erred in finding that the statement of Marlon Powell was admissible under Evid.R.804(B)(6) as the state failed to prove that the actions of appellant caused Marlon Powell to fail to appear, depriving appellant of a fair trial in violation of the confrontation clause of the United States Constitution.

5.

II.  Appellant was deprived of affective assistance of trial counsel as counsel failed to preserve an argument on the record for appeal.

III.  Appellant's convictions for murder and participation in a criminal gang were not supported with legally sufficient evidence.

IV.  Appellant's convictions for murder and participation in a criminal gang fell against the manifest weight of the evidence.

V.  Appellant's sentence is contrary to law.

**Marlon Powell's Interview**

{¶ 12} In his first assignment of error, appellant contends that the court abused its discretion in admitting the taped interview of Marlon Powell into evidence pursuant to Evid.R. 804(B)(6).

{¶ 13} "[T]the admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001).  An abuse of discretion is demonstrated where the trial court's attitude in reaching its decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 14} Under Evid.R. 804(B)(6), a statement offered against a party is not excluded by the hearsay rule "if the unavailability of the witness is due to the wrongdoing of the party for the purpose of preventing the witness from attending or testifying."  To

6.

be admissible under Evid.R. 804(B)(6), the "offering party must show (1) that the party engaged in wrongdoing that resulted in the witness's unavailability, and (2) that one purpose was to cause the witness to be unavailable at trial." 2001 Staff Notes, Evid.R. 804(B)(6), *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 84.

{¶ 15} In his interview with Detective Clark, Powell repeatedly expressed concerns for his safety. Detective Clark testified that he arranged for Powell to leave town after he implicated appellant in the murder. The state introduced a taped three way phone call where Marlon Powell was offered $5,000 to not testify at appellant's trial. Although appellant himself is not on that specific recording, Powell states to the callers "tell Quincy to keep that little bit of money" because "he wasn't coming to court" and that he "didn't need it." Because appellant is the only one who would benefit by Powell's unavailability and given the fact that his name is mentioned in response to a bribe, we find that the state properly demonstrated that appellant engaged in wrongdoing that resulted in Powell's unavailability. Appellant's first assignment of error is found not well taken.

{¶ 16} In his second assignment of error, appellant contends that he was denied effective assistance of counsel in that his counsel failed to object to the admission of Powell's interview into evidence.

{¶ 17} To prevail on a claim of ineffective assistance of counsel, a claimant must demonstrate that counsel's performance was deficient, and that the deficient performance resulted in prejudice. *In re Anisha N.*, 6th Dist. Lucas No. L-02-1370, 2003-Ohio-2356.

7.

That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In conducting our review for ineffective assistance, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689.

{¶ 18} While it is true that counsel did not object to the admission of the tape, counsel did ask that his exhibit C be admitted into evidence and played for the jury for impeachment purposes. The court granted counsel's request.

{¶ 19} Exhibit C was Marlon Powell's first interview with Detective Clark wherein he denies knowing who appellant is and he denies knowing who shot the victim. This interview took place a few weeks before Powell identified appellant as the person holding the gun after the victim was shot.

{¶ 20} When counsel acts on reasonable tactical strategies, a defendant cannot claim ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 48, 402 N.E.2d 1189 (1980). Here, counsel's decision to allow the jury to see both of Powell's interviews constitutes a matter of trial strategy and not ineffective assistance of counsel. Appellant's second assignment of error is found not well-taken.

**Sufficiency of the Evidence**

8.

**{¶ 21}** In his third assignment of error, appellant contends that his convictions are supported by insufficient evidence.

**{¶ 22}** Sufficiency of the evidence is a legal standard that tests whether the evidence submitted at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On appeal, the test is whether, when "viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Criminal convictions should not be overturned on the basis of insufficient evidence unless reasonable minds could not reach the same conclusion as the trier of fact. *State v. Smith*, 6th Dist. Lucas No. L-14-1119, 2015-Ohio-2676, ¶ 8.

**{¶ 23}** Appellant was convicted of murder in violation of R.C. 2903.02(B). R.C. 2903.02(B) provides: "[N]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." Appellant was also convicted of participating in a criminal gang in violation of R.C. 2923.42(A) and (B) which provides:

> No person who actively participates in a criminal gang, with knowledge that the criminal gang engages in or has engaged in a pattern of criminal gang activity, shall purposely promote, further, or assist any criminal conduct, as defined in division (C) of section 2923.41 of the

Revised Code, or shall purposely commit or engage in any act that constitutes criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code. * * * Whoever violates this section is guilty of participating in a criminal gang, a felony of the second degree.

The jurors further found that appellant did have a firearm under his control while committing murder (R.C. 2941.145), and they found that appellant did participate in a criminal gang while committing murder (R.C. 2941.142).

{¶ 24} The jury heard testimony that the victim was shot and that appellant was immediately seen standing near the victim with a gun in his hand. The jury heard testimony that on the night of the shooting, appellant told his girlfriend that he had hit someone in the head with a gun and the gun fired. The gas station surveillance tape shows appellant present at the scene when the victim was shot. Detective Clark testified that appellant believed that the victim was responsible for the song that mentions his brother and appellant was angry about it. The jury heard Detective Clark, in his interview with Marlon Powell, tell Powell that Powell's godmother had called Clark and told him that Powell had confided in her that appellant had shot the victim. Finally, the jury heard expert testimony and saw documents establishing appellant as a participating gang member. Viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Appellant's third assignment of error is found not well-taken.

**Manifest Weight of the evidence**

{¶ 25} In his fourth assignment of error, appellant contends his convictions are against the manifest weight of the evidence.  With respect to the manifest weight of the evidence, a reviewing court questions "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶ 77, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (10th Dist.1983).  The appellate court considers all of the evidence, sits as a "thirteenth juror," and decides whether a greater amount of credible evidence supports an acquittal such that the jury "clearly lost its way" in convicting the appellant.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 26} Both of appellant's evidentiary arguments are centered around the fact that, despite there being a large gathering of people at the gas station when appellant was shot, no one came forward to say they actually saw appellant commit the murder and the murder was not captured on the surveillance tape.  Nevertheless, we find nothing to suggest that the jury lost its way or that the result was a manifest miscarriage of justice.  Appellant's fourth assignment of error is found not well-taken.

### Sentencing

{¶ 27} In his fifth and final assignment of error, appellant contends that the court erred in sentencing him to a mandatory term of post release control for murder.

11.

{¶ 28} It is undisputed that the trial court incorrectly advised appellant that he was subject to a period of post-release control for his felony murder charge. Felony murder is an unclassified felony to which the post-release control statute does not apply. *State v. Eggers*, 2d Dist. Clark No. 2011-CA-48, 2013-Ohio-3174, ¶ 25. Rather, an individual sentenced for an unclassified felony is either ineligible for parole or becomes eligible for parole after serving a period in prison. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 36.

{¶ 29} The trial court's error, however, does not render appellant's entire sentence void, nor does it require a de novo sentencing hearing. *See State v. Brister,* 5th. Dist. Guernsey No. 04-CR-05, 2013-Ohio- 5874, ¶ 19. ("[t]he trial court did not err in issuing a nunc pro tunc entry removing the improperly imposed term of post release control.") A trial court may use a nunc pro tunc entry to correct mistakes in judgments, orders, and other parts of the record so the record speaks the truth. *State v. Greulich*, 61 Ohio App.3d 22, 24, 572 N.E.2d 132 (9th Dist.1988).

{¶ 30} Appellant next contends that the court erred in sentencing appellant to a mandatory prison term of three years for the gun specification when the elements listed on the jury form listed the elements for a one year mandatory term for a gun specification. R.C. 2929.14(D)(1)(a)(i) requires that an additional prison term of three years shall be imposed if the offender is convicted of the type of specification described in R.C. 2941.145, and an additional one-year prison term shall be imposed if the offender is convicted of the type of specification described in R.C. 2941.141.

12.

**{¶ 31}** The jury's verdict form stated that appellant had "a firearm on or about his person or under his control while committing the offense of murder." It did not include the language from R.C. 2941.145 that appellant also "displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." Without the language from R.C. 2941.145, it appears that the jury only found appellant guilty of the specification described in R.C. 2941.141, which only requires a finding that the offender "had a firearm on or about the offender's person or under the offender's control while committing the offense." Although the jury's verdict form failed to include the language from R.C. 2941.145, we cannot conclude that the trial court was precluded from sentencing appellant to a three-year term of actual incarceration for violating R.C. 2941.145. The indictment properly cited R.C. 2941.145 in stating

> [T]he grand jurors further find and specify that the offender had a firearm on or about the offender or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm or used it to facilitate the offense.

**{¶ 32}** Moreover, the jury was properly instructed on the meaning of the term "brandish." Accordingly, we find that the trial court did not err by sentencing appellant to a three-year term of actual incarceration for the firearm specification on count one.

**{¶ 33}** Appellant next contends that the court did not make the necessary findings need to impose consecutive sentences.

13.

{¶ 34} In accordance with R.C. 2929.14, a trial court may impose consecutive sentences if the court finds that (1) a consecutive sentence is necessary to protect the public from future crime or to punish the offender and (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. R.C. 2929.14(C)(4). In addition to these two factors, the court must find any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 35} Compliance with this statute "requires separate and distinct findings in addition to any findings relating to purposes and goals of criminal sentencing." *State v. Jones*, 93 Ohio St.3d 391, 399, 754 N.E.2d 1252 (2001). According to the Ohio Supreme

14.

Court, however, "a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29.

{¶ 36} In addition, the trial court must both (1) make the statutory findings mandated for consecutive sentences under R.C. 2929.14(C)(4) at the sentencing hearing and (2) incorporate those findings into its sentencing entry. *Id.* at syllabus. "[B]ecause a court speaks through its journal," the trial court should "incorporate its statutory findings into the sentencing entry." *Id*. at ¶ 29.

{¶ 37} We have held that while the trial court need not quote the statute verbatim, the sentencing entry must include findings "(1) that the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct, and (3) that one of the circumstances listed in R.C. 2929.14(C)(4)(a)-(c) applies." *State v. Long*, 6th Dist. Wood Nos. WD-14-042, 043, 2015-Ohio-920, ¶ 8, quoting *State v. Jude,* 6th Dist. Wood No. WD-13-055, 2014-Ohio-2437, ¶ 10.

{¶ 38} *Bonnell* plainly requires that the findings be incorporated into the sentencing entry itself. *State v. Thomas*, 1st Dist. Hamilton No. C-140070, 2014-Ohio-383, ¶ 8. *Accord State v. Payne,* 6th Dist. Lucas No. L-13-1025, 2014-Ohio-1147.

15.

**{¶ 39}** Here, appellant acknowledges that the court made the proper findings at the sentencing hearing. Yet, the sentencing entry is devoid of any of the required findings. The entry merely reads: "[F]or the reasons stated into the record, the sentences are ordered to be served consecutively."

**{¶ 40}** We find that the foregoing language is overly broad and fails to sufficiently incorporate the consecutive sentence findings made by the trial court at the sentencing hearing. However, this mistake can also be corrected via a nunc pro tunc entry and does not amount to reversible error. *State v. Black,* 2d Dist. Darke No. 2014-CA-4, 2014-Ohio-5570, ¶ 9, quoting *Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.3d 659, at ¶ 30.

**{¶ 41}** Appellant's fifth assignment of error is found well-taken in part and not well-taken in part.

**{¶ 42}** The judgment of the Lucas County Court of Common Pleas is hereby affirmed. The case is remanded to the trial court for the purpose of a nunc pro tunc entry removing the improperly imposed term of post release control and to incorporate the consecutive sentence findings it made at the sentencing hearing. Appellant is ordered to pay the cost of this appeal pursuant to App .R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                           _____

Stephen A. Yarbrough, J.                            JUDGE

                                            _____
James D. Jensen, P.J.                               JUDGE
CONCUR.

                                            _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.