[Cite as *State v. Hartman*, 2020-Ohio-4245.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                    Court of Appeals No. S-19-036

    Appellee                               Trial Court No. 18 CR 1033

v.

Nicholas W. Hartman                     **DECISION AND JUDGMENT**

    Appellant                              Decided:  August 28, 2020

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Hotz, Assistant Prosecuting Attorney, for appellee.

John A. Brikmanis, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} This matter is before the court on appeal from the August 2, 2019 judgment of the Sandusky County Court of Common Pleas, which, after a jury found him guilty of six counts of rape, sentenced him to an aggregate prison term of 60 years.  Finding no error, we affirm the judgment.

## II. Facts and Procedural Background

{¶ 2} Appellant Nicholas Hartman was convicted of numerous counts of rape of his stepdaughter. Appellant began a relationship with the victim's mother, C.H., in 2011, while she was still married to the father of her two daughters, R.Y. and M.Y. R.Y., the victim, was around seven years old when she met appellant. M.Y. was 18 months younger than R.Y. In the beginning of her relationship with appellant, C.H.'s husband had custody of the girls and C.H. had visitation rights. Once C.H.'s divorce was final, she took custody of the girls and married appellant, and appellant became a stepfather to R.Y. and M.Y.

{¶ 3} C.H. typically worked the night shift, first in retail, and later at assisted care facilities as a nurses' aid. For the three years prior to his arrest, appellant worked the day shift at a paper factory, typically leaving for work before C.H. returned home from her shift, and often working 10-hour days. R.Y. and her sister usually got ready for school on their own. R.Y. struggled in school and suffered from anxiety, and school counselors suggested R.Y. might have ADHD. Appellant gave R.Y. marijuana to help with her ADHD and to treat her anxiety, and appellant and R.Y. smoked marijuana together with C.H.'s approval.

{¶ 4} On Friday, September 22, 2017, at the beginning of R.Y.'s eighth grade year, R.Y. revealed that appellant had been sexually abusing her for years. While watching a video in health class about dating violence, R.Y. became upset and left the classroom. Her health teacher emailed the school counselor, Jody Moss, about the

2.

incident.  Additionally, students heard R.Y. crying in the restroom and informed teachers. R.Y. initially told Ms. Moss that the video presented a hard topic for her and upset her. But R.Y. also confided to her friends that appellant had raped her.

{¶ 5} On Monday, September 24, after urging from her friends, R.Y. met with Ms. Moss at the start of the school day.  R.Y.'s friend, E.M., accompanied her and told Ms. Moss that appellant raped R.Y.  When R.Y. become upset, Ms. Moss excused E.M. from the room and spoke with R.Y. alone.  R.Y. told Ms. Moss that appellant "had sex" with her and did other sexual things to her, and it had been happening since the end of her fifth-grade year.  The most recent incident occurred the previous week.  Ms. Moss immediately notified authorities.

{¶ 6} Fremont Police Detective Jason Kiddey and Angela Wheeler from the Sandusky County Children Services agency came to the school and interviewed R.Y. The school then called C.H. and asked her to come for a meeting.  C.H. called appellant and asked him to accompany her to the school.  When C.H. and appellant arrived, Detective Kiddey put appellant in a separate room.

{¶ 7} Because R.Y.'s allegations implicated a household member, Wheeler asked appellant to leave the home and spoke with C.H. about a safety plan for R.Y.  C.H. consented to no contact between R.Y. and appellant, and appellant moved out of the home.  Shortly after agreeing to limit contact, C.H. recorded a cell phone video of appellant, begging R.Y. to recant her allegations, and showed the video to R.Y.  On September 27, Wheeler learned of the video and the indirect contact facilitated by C.H.,

3.

and expressed concern about C.H.'s violation of the safety plan. C.H. did not feel she did anything wrong, but consented to a new safety plan, placing R.Y. and her younger sister in the care and custody of their father, T.Y.

{¶ 8} On October 22, 2018, appellant was arraigned on seven counts of rape: in Counts 1-3, rape in violation of R.C. 2907.02(A)(1)(b) and (B), and in Counts 4-7, rape in violation of R.C. 2907.02(A)(2) and (B). Counts 1-3 pertained to rape when R.Y. was 12 years old and Counts 4-7 pertained to rape after R.Y. turned 13, up until shortly before she reported the conduct to her friends and Ms. Moss, the school counselor. The state later withdrew Count 7.

{¶ 9} On October 26, 2018, appellant—through trial counsel—filed a request for discovery, and the state certified service of discovery, bill of particulars, and a demand for defense discovery shortly thereafter. On January 17, 2019, appellant requested additional time for discovery to seek an expert, which the trial court granted.

{¶ 10} At a final pretrial in July 2019, the trial court addressed numerous motions in limine filed by appellant, including a motion to preclude admission of the contents of a police report pertaining to appellant's 2004 sex offense conviction, a motion to preclude admission of evidence of alleged, unindicted conduct by appellant concerning R.Y in Indiana, and a motion to preclude evidence of appellant's marijuana use with R.Y. On July 16, 2019, the trial court issued a written decision, tentatively granting the motion as to the prior conviction and tentatively denying the motions as to the Indiana conduct and

4.

marijuana use, with each ruling subject to further review during trial based on evidence introduced.

{¶ 11} The week before trial, Wheeler and another caseworker, Gabriela Henry, met with R.Y. at her grandparents' home to explain the process of trial, as is common practice in the days before a trial. During the meeting, R.Y. asked for assurances that she would be able to return home to her mother, C.H., after the trial. Wheeler made no promises, but also did not threaten R.Y. with foster care to secure her testimony at trial.

{¶ 12} The matter proceeded to a two-day jury trial, beginning July 30, 2019. R.Y., who was 14 at the time of trial, testified regarding touching beginning when she was 11, and appellant's offer to teach her about sex. She also testified regarding an incident of vaginal rape the summer before her sixth-grade year, and incidents of fellatio and cunnilingus shortly afterward. R.Y. testified regarding more than five incidents of vaginal rape after she turned 13, during her seventh-grade year, and ongoing vaginal rape into her eighth-grade year, when she finally reported the abuse. R.Y. indicated she let appellant have sex with her to keep him from being upset, and smoking marijuana helped her relax and endure the sex.

{¶ 13} In addition to R.Y.'s testimony, the state presented testimony from E.R. and another of R.Y.'s friends, Ms. Moss, Wheeler, and Detective Kiddey. Detective Kiddey testified regarding jail phone calls he reviewed that were recorded between appellant and C.H. Kiddey indicated that, initially, C.H. was angry with appellant and appellant attempted to provide an explanation for R.Y.'s accusations, stating "he blacks

5.

out, and when he blacks out, he's also high functioning." Appellant also told C.H. that he did not touch R.Y. "to his knowledge," but qualified the statement with "what if I blacked out?" He later repeated the statement, saying "As far as I know, I didn't touch her * * * I hope I didn't black out." Again, he stated, "You know when I black out, I am high functioning, it could have happened and I wouldn't [have] known."

{¶ 14} In later calls, appellant threatened suicide if C.H. did not believe him and take his side. He also told C.H. "The only way you're gonna save me is if she changes her story, her story ain't gonna change unless somebody says something. Somebody's got to do something to get her to tell the truth. If not, I'm gonna burn, get it done." In the final recorded jail call, appellant told C.H., "Need to choose between me or the kid. Tell her to tell the truth and she will never have to see me again. Tell her to say this shit didn't happen, because it didn't happen."

{¶ 15} Kiddey and Wheeler conducted interviews of R.Y as part of their investigation. Both indicated that R.Y. was extremely upset when they first spoke with her at the school. R.Y. was crying, with her legs pulled up to her chest, shaking uncontrollably. After R.Y. calmed down, she was able to talk to Kiddey and Wheeler, and describe the allegations. Kiddey and Wheeler spoke to R.Y. twice after the initial interview, and both testified that R.Y.'s telling of events remained consistent and did not change.

{¶ 16} Kiddey went to the home and retrieved bedding for forensic testing and asked that R.Y. be taken for a sexual assault examination, even though the most recent

6.

allegation was beyond the 72-hour window, the typical period for collecting physical evidence of an assault. C.H. took R.Y. for the examination, and the results indicated no recent injury. Neither the state nor the defense called an expert or medical witness, with no forensic or medical evidence of rape proffered at trial.

{¶ 17} Appellant's defense focused on R.Y.'s motive to lie about the allegations, and although no expert testified regarding the medical examination, appellant's counsel repeatedly questioned non-medical witnesses about the sexual assault examination report, and argued that the report proved R.Y. was still a virgin and had lied about the rapes. C.H. and R.Y.'s younger sister testified on behalf of appellant and characterized R.Y. as dramatic and attention-seeking and characterized her testimony as a lie.

{¶ 18} At the close of testimony, the trial court instructed the jury, and included a lesser included instruction as to Counts 4, 5, and 6, permitting consideration of the lesser included offense of unlawful sexual conduct with a minor as to each count. After deliberating, the jury returned guilty verdicts as to all six counts as charged in the indictment. On August 2, 2019, the trial court held a sentencing hearing. As to Counts 1-3, the trial court imposed a prison term of 25 years to life pursuant to R.C. 2971.03(A)(3)(d)(i). As to Counts 4-6, the trial court imposed a prison term of 10 years for each count. The trial court ordered the prison terms imposed in Counts 1 and 2 to be served concurrent to each other, and consecutive to the prison term imposed in Count 3, for a total of 50 years to life. The trial court ordered the prison terms imposed in Counts 4 and 6 to be served concurrent to each other, but consecutive to the sentence imposed for

7.

Counts 1-3, for an aggregate prison term of 60 years to life. At hearing, the trial court failed to indicate whether the term for Count 5 was imposed concurrent or consecutive to the other sentences, resulting in a concurrent sentence. However, in the sentencing entry, Count 5 was ordered to be served concurrent to Counts 4 and 6, and *consecutive* to the first two counts.

{¶ 19} Appellant filed a timely appeal of the verdict and judgment.

### III. Assignments of Error

{¶ 20} Appellant identifies the following as assignments of error for our review:

1. Ineffective Assistance of Counsel.

2. Prosecutorial Misconduct.

3. Court Incorrectly Ruled on Issues Evidence Rule 404.

4. Fundamental element of the offense is missing dates.

5. Confusion on Sentencing.

### IV. Analysis

{¶ 21} In his first two assignments of error, appellant argues some consistent themes, focusing on R.Y.'s credibility and willingness to testify, the lack of medical evidence of rape, and the prosecutor's conduct during the proceedings. For ease of discussion, we address appellant's first two assignments of error together, based on these themes, followed by analysis of the remaining assignments of error raised by appellant.

8.

## A. Ineffective Assistance of Counsel and Prosecutorial Misconduct

{¶ 22} Appellant challenges the performance of the lawyers in the case, arguing his trial counsel and the prosecutor each prevented him from receiving a fair trial. As to his trial counsel, appellant argues he was deficient in failing to call an expert witness to explain the results of the sexual assault examination and failed to adequately question the state's witnesses to prove that R.Y.'s testimony was coerced. Appellant also argues that Gabriela Henry, a caseworker who was not called to testify, was present during testimony to intimidate R.Y. and relay details of the proceeding to Wheeler, prior to her own testimony. Appellant argues that his counsel should have requested the trial court remove Henry from the courtroom pursuant to the separation of witnesses order.

{¶ 23} As to the prosecutor, appellant argues he "orchestrated a scene" during R.Y.'s testimony to bolster her credibility, intentionally misstated facts regarding the sexual assault examination report, and withheld evidence from the defense consisting of notes from the interview of R.Y., prior to the time her mother arrived at the school.

{¶ 24} We review the conduct of trial counsel and the prosecutor for error that likely altered the outcome of trial. For trial counsel, we apply the test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We must first determine whether the performance of trial counsel "fell below an objective standard of reasonableness." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), citing *Strickland* at 687-688. In considering counsel's performance, our scrutiny is deferential, with "a strong presumption that counsel's conduct falls within a wide range

9.

of reasonable professional assistance." *Bradley* at 142, quoting *Strickland* at 689. If we find trial counsel's representation was deficient, we must next find that prejudice arose, with a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bradley* at 142, quoting *Strickland* at 694.

{¶ 25} The test for prosecutorial misconduct also involves a two-step analysis. First, we must determine whether the prosecutor's conduct was improper. If we find the prosecutor's conduct was improper, we must next determine whether this conduct prejudicially affected appellant's substantial rights. *State v. LeMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121, citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "The touchstone of this analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *LeMar* at ¶ 121, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶ 26} We apply these tests of attorney performance to each instance of error asserted by appellant.

### 1. Victim's Testimony

{¶ 27} Appellant argues that R.Y.'s testimony was coerced by the prosecutor and the non-testifying caseworker's "intimidating" presence in the courtroom, and his trial counsel did little in cross-examining R.Y. or Wheeler to prove this coercion. Where testimony is induced through extreme measures, rendering it inherently unreliable, coercion might taint the proceedings and violate a defendant's right to due process. *See State v. Wolery*, 46 Ohio St.2d 316, 324, 348 N.E.2d 351 (1976).

10.

{¶ 28} Here, the record demonstrates no coercion. During the trial, R.Y. was asked about threats to take her away from her mom, and she indicated no such threats were made. Wheeler was asked about the same subject, and while she acknowledged that R.Y. wanted to know if she would be able to return to her mom, Wheeler testified that she made no promises about custody, indicating that the issue was not part of the criminal proceedings. There is nothing in the record to support a finding of either ineffective assistance or prosecutorial misconduct based on this testimony.

{¶ 29} Appellant next argues his trial counsel was ineffective in failing to request that the trial court remove a caseworker, Gabriela Henry, from the courtroom pursuant to the separation of witnesses order, characterizing Henry's presence as "intimidating" to coerce the victim's testimony and arguing Henry was also communicating details of the proceedings to her co-worker, Wheeler, prior to Wheeler's testimony for the prosecution. In support, appellant cites to a single reference to Henry in the trial transcript when R.Y. identified her as the ongoing caseworker and testified that neither Henry nor Wheeler had ever told her what to say or threatened her.

{¶ 30} It is unclear how a failure to request the removal of Henry, a non-witness, pursuant to the separation of witnesses order constituted ineffective assistance of counsel. "An order directing the 'exclusion' or 'separation' of witnesses or the like * * *, is effective only to require the exclusion of witnesses from the hearing during the testimony of other witnesses." Evid.R. 615(A). Furthermore, appellant points to nothing in the record that demonstrates Wheeler's testimony was guided or influenced or framed by

Henry's conduct. There is also nothing in the record to support appellant's contention that Henry's presence guided or influenced R.Y.'s testimony.

{¶ 31} Finally, appellant argues that the prosecutor attempted to bolster R.Y.'s credibility by creating a scene and interrupting her testimony with a request for a recess, claiming R.Y. was so distressed she was feeling ill, when in fact, R.Y. never indicated she needed a break. Appellant claims the "scene" consisted of R.Y.'s hushed testimony, which the jury could not hear, with the prosecutor misrepresenting R.Y.'s illness during a sidebar, out of the jury's hearing.

{¶ 32} Based on the record, as R.Y. testified regarding an incident of rape the trial court interrupted her once, asking her to speak up. In response to a question moments later, R.Y. indicated she did not feel comfortable talking about the rape, and the prosecutor asked if she needed a break. The prosecutor immediately requested a recess and R.Y. then began to cry. The victim advocate took her from the courtroom as trial counsel indicated trouble hearing her testimony.

{¶ 33} Appellant fails to argue any prejudicial effect of the testimony and statements out of the jury's hearing, with the prosecutor's conduct appearing neither staged nor designed to elicit an emotional response from the jury. The jury, moreover, was tasked with observing R.Y.'s testimony and considering her demeanor and appearance on the witness stand in assessing her credibility. "A fundamental premise of our criminal trial system is that 'the jury is the lie detector.'" *State v. Ellis*, 2015-Ohio-2120, 36 N.E.3d 722, ¶ 53 (5th Dist.), quoting *United States v. Barnard*, 490 F.2d

12.

907, 912 (9th Cir.1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974).

{¶ 34} The jury appears to have credited R.Y.'s testimony, considering her words, her demeanor, and any "theatrics" in the proceeding. "Thus, this court in keeping with precedent defers to the jury's assessment of the witnesses' credibility." *State v. Szych*, 6th Dist. Lucas No. L-88-033, 1988 WL 101184, *2 (Sept. 30, 1988); *see also State v. Olaniyan*, 6th Dist. Huron No. H-10-027, 2011-Ohio-3716, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Accordingly, we find no attorney error regarding the testimony that resulted in any prejudice to appellant.

### 2. Medical Evidence

{¶ 35} The next category of attorney error, raised by appellant, concerns the medical evidence and testimony. Appellant argues his trial counsel was ineffective in failing to call an expert to testify regarding the sexual assault examination results and the prosecutor engaged in misconduct by mischaracterizing those results. Neither argument has merit.

{¶ 36} The examination results indicated no injury or trauma, and Detective Kiddey indicated the exam occurred beyond the 72-hour window that most likely yields physical or medical evidence of a sexual assault. The prosecution did not rely on the examination report as evidence of rape. Trial counsel, however, repeatedly interjected his own interpretation of the report, questioning non-expert witnesses regarding the

13.

meaning of "redundant hymen" and arguing the presence of an "intact hymen" to the jury without any evidentiary support.

{¶ 37} Appellant's argument of prosecutorial misconduct is wholly unsupported by the record and seems to be based entirely on the prosecutor's objections to the interpretation of the examination results by appellant's trial counsel as demonstrating an "intact" hymen. Trial counsel first stated in opening argument that R.Y. was not raped because her hymen is intact. Trial counsel repeated this assertion in his cross-examination of Wheeler, who had reviewed the report as part of the investigation. On redirect, Wheeler testified she had no medical knowledge and did not understand the meaning of a "redundant hymen." In his closing argument, trial counsel repeated his theory that vaginal rape never occurred because R.Y.'s hymen was examined and found "intact." The prosecutor, however, noted the actual findings written in the report indicated "no acute injury," and noted the absence of any finding the hymen was "intact."

{¶ 38} Now, on appeal, appellant continues to argue that a redundant hymen is an "intact" hymen, proving he never raped R.Y. as she claimed. He further argues that the testimony of an expert would have demonstrated this fact. In support, appellant references an online glossary of terms used in investigations of child sexual abuse, with "redundant hymen" defined in terms of appearance and not condition.[1] Furthermore, the

---

[1] Appellant refers to a publication of the North Carolina Court System, Office of Indigent Defense Services, 2006 fall training conference, available at: http://www.ncids.org/ Defender Training/2006 Fall Conference/Glossary Sexual Abuse Terminology.pdf. (accessed Aug. 24, 2020).

14.

glossary does not include any mention of "intact hymen" as a term used in sexual abuse investigations.[2]

{¶ 39} The report indicated no injury or trauma, and the prosecutor's repetition of these findings was not a misrepresentation of facts. Therefore, the failure of trial counsel to call an expert witness to testify regarding the absence of injury or trauma was of no consequence. Moreover, even if we accepted appellant's interpretation of an "intact" hymen, injury, trauma, or even a change to the hymen is not an element of the offense of rape. As we previously noted in an appeal of a rape conviction, "penetration, however slight, is sufficient to complete vaginal intercourse" as an element of a rape charge. *State v. McGovern,* 6th Dist. Erie No. E-08-066, 2010-Ohio-1361, ¶ 55. Accordingly, we find neither attorney error nor prejudice based on the lack of expert testimony to explain the examination results.

---

[2] There is recent scholarship challenging the myth of an "intact" hymen as useful in sexual assault examinations, noting hymeneal anatomy is widely varied, and diagnosing a change to the hymen, in the absence of any injury, requires more than a single examination without a baseline or history. The authors urge law enforcement and prosecutions to focus on injury or trauma and to avoid non-medical concepts such as "intact" or "broken" when describing the condition or appearance of hymeneal tissue. *See* Mishori R, Ferdowsian H, Naimer K, Volpellier M, McHale T, *The little tissue that couldn't - dispelling myths about the Hymen's role in determining sexual history and assault.* Reprod Health. 2019 Jun 3;16(1):74, available at https://pubmed.ncbi.nlm.nih.gov/31159818/ (accessed Aug. 24, 2020).

15.

### 3. Conduct during the Proceedings

{¶ 40} The final category of attorney error asserted by appellant pertains to pretrial discovery and the prosecutors' remarks during the trial. Appellant argues that the prosecution withheld interview notes of the initial interview of R.Y., and his trial counsel failed to identify the omission of these notes in the discovery produced by the state. Appellant also argues that the prosecutor opined on the truthfulness of witnesses, in violation of *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

{¶ 41} As to outstanding discovery, the record demonstrates that discovery was complete. At the final pretrial, the trial court specifically addressed the issue of discovery in the following exchange:

**The Court:** Is there outstanding Discovery the State – or Defense feels the State has yet to provide?

**[Trial Counsel]:** No.

**The Court:** No, okay.

**[Trial Counsel]:** He's complaining that I haven't given him something.

**The Court:** But it's something different than – you – you've satisfactorily –

**[Trial Counsel]:** Saw –

**The Court:** -- received what you believe you need to –

[Trial Counsel]: Yeah, I – I don't – I think we're just going to have to deal with that at trial –

The Court: Yes.

[Trial Counsel]: -- some testing and –

The Court: Okay, but I don't want to speak for you here, but – but just to clear it up, you're satisfied you've received the Discovery that's in the State's possession? There's not something that's being withheld?

[Trial Counsel]: I think I've seen it, yeah, the – the alleged STD testing that was negative and that kind of thing. I think I've gotten that – negative as to the child anyway.

The Court: Okay. So there's nothing as you sit here today saying I need to have that?

[Trial Counsel]: No, no, I think I've got it.

{¶ 42} In arguing a discovery violation, appellant claims there were notes from the initial interview of R.Y. that were requested and never produced. In doing so, he mischaracterizes the exchange between the trial court and his trial counsel. Appellant argues that his trial counsel acknowledged to the court that something was missing in the discovery produced by the state. The record, however, indicates that appellant complained to his trial counsel about wanting to see discovery, presumably test results that counsel had reviewed but did not give to him. Trial counsel indicated he had

reviewed negative test results from a test administered to R.Y. for sexually transmitted disease.

{¶ 43} An accused has a due process right to receive evidence that is material to either guilt or punishment. *State v. Roughton*, 132 Ohio App.3d 268, 299, 724 N.E.2d 1193 (6th Dist.1999), citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In this case, appellant argues the state failed to produce interview notes but references a wholly different type of discovery, test results. At trial, the defense strategy included refuting R.Y.'s testimony regarding rapes, based on the fact that appellant had herpes and R.Y.'s test results indicated she did not contract herpes.

{¶ 44} Appellant's trial counsel referenced the test results, noted in the exchange with the trial court at the final pretrial, throughout the trial. He referred to the fact that R.Y. did not have herpes in his opening statement and closing argument, and he used the fact that R.Y. tested negative in cross-examining Detective Kiddey about the lack of physical evidence to corroborate R.Y.'s testimony. C.H. also testified that appellant had herpes, which he had passed to C.H., and she believed that the negative test result for R.Y. demonstrated appellant could not have engaged in any sexual conduct with R.Y.

{¶ 45} As to other discovery, trial counsel indicated—with certainty—that all discovery had been received. In arguing incomplete discovery on appeal, appellant fails to demonstrate that any missing interview notes even exist. Accordingly, based on the record, we find no failure to produce discovery, as argued by appellant.

18.

{¶ 46} We also find no *Berger* violation by the prosecution, as argued by appellant. In *Berger*, the United States Supreme Court considered whether the cumulative effect of prosecutorial misconduct merited a new trial. In that case, the prosecutor made numerous misstatements of fact during cross-examination of witnesses, repeatedly hinted at facts not in evidence—but known to the prosecutor—to insinuate a witness was not truthful, and made improper argument, "calculated to mislead the jury." 295 U.S. at 85-89, 55 S.Ct. 629, 79 L.Ed. 1314.

{¶ 47} In this case, appellant argues misconduct by the prosecutor and a failure to object by his trial counsel regarding statements made by the prosecutor in his closing argument. Appellant objects to statements made by the prosecutor in response to the defense characterization of R.Y. as manipulative and dramatic. The prosecutor cited to the testimony in refuting this characterization, and did not venture beyond the record. Accordingly, the comments were fair comments on the evidence and not improper. *See State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 202 (argument in response to defense counsel's statement, based on the evidence, not improper); *but see State v. Searfoss*, 135 N.E.3d 853, 2019-Ohio-4619, ¶ 150 (prosecutor's extensive reference to violations of civil law and professional ethics code was improper, and invited a criminal conviction based on matters beyond the evidence).

{¶ 48} Upon consideration of the issues raised regarding the performance of the prosecution and trial counsel, we find no misconduct or ineffective assistance, applying

19.

the appropriate standards as to each. Therefore, we find appellant's first and second assignments of error not well-taken.

## B. Evidentiary Issues

{¶ 49} In his third assignment of error, appellant challenges the admissibility of evidence of prior conduct. Specifically, appellant argues that the police report from a 2004 sexual battery conviction against a woman with an intellectual disability could not be used to impeach him, should he testify.[3] Trial counsel challenged the admissibility of the report prior to trial, pursuant to Evid.R. 404(B). The prosecutor indicated during the pretrial hearing that he had no plan to use the 2004 report but preserved the possibility of introducing the report based on evidence adduced during the trial. The trial court made a tentative ruling in appellant's favor, finding the contents of the report inadmissible subject to further review during the proceedings.

{¶ 50} During the trial, appellant considered testifying. Out of the presence of the jury, the prosecutor sought a ruling that the report would be admissible to impeach appellant, if he took the stand in his defense, arguing Evid.R. 609(B) permitted this use of the report. Appellant conceded the offense was technically within the ten-year limitation of the rule, waiving any objection based on the age of the offense. However, appellant

---

[3] Appellant indicates the offense was against a "retarded" woman. Effective October 12, 2016, the Ohio General Assembly removed references in the Revised Code "to the term 'mental retardation' and derivations of that term, to replace those references with the term 'intellectual disability' and corresponding derivations of that term, and to do so without a resulting change in meaning." 2016 Sub.H.B. 158, 2016 Ohio Laws File 122.

20.

argued that questioning should be limited to whether he had committed a third-degree felony without mention of "a sex offense" which would expose him to the type of prejudice Evid.R. 403(B) is designed to prevent.

{¶ 51} The trial court determined that, should appellant testify, "evidence of the conviction of that offense" would be admissible to impeach him, and appellant chose not to testify. Appellant now argues the offense was beyond the ten-year limitation and unduly prejudicial, and, therefore, the trial court erred.

{¶ 52} Evid.R. 609(A) governs admissibility of prior convictions for impeachment purposes, providing that an accused's prior conviction may be admissible, "notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B)," if the trial court "determines that the probative value of the evidence outweighs the danger of unfair prejudice, or confusions of the issues, or of misleading the jury." Evid.R. 609(B) limits the use of old convictions, providing:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of community control sanctions, post-release control, or probation, shock probation, parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However,

21.

evidence of a conviction more than ten years old as calculated herein, is not

admissible unless the proponent gives to the adverse party sufficient

advance written notice of intent to use such evidence to provide the adverse

party with a fair opportunity to contest the use of such evidence.

Appellant's trial counsel acknowledged his parole terminated within the ten-year period,

conceding the issue as to the time limit. Appellant's argument that the conviction was

too old, therefore, is contradicted by the record and without merit.

{¶ 53} Appellant next argues that use of the conviction would have been unduly

prejudicial had he testified, and a violation of Evid.R. 404(B), barring evidence of prior

acts to prove appellant acted in conformity. Of significance is the preliminary nature of

the trial court's ruling, prior to hearing any of the evidence, and the fact that appellant did

not testify. The United States Supreme Court, in *Luce v. United States*, 469 U.S. 38, 105

S.Ct. 460, 83 L.Ed.2d 443 (1984), considered the federal rule regarding impeachment

with a prior conviction, and held that a defendant must testify to preserve the issue of

improper impeachment for appeal. As the Supreme Court explained in *Luce*:

A reviewing court is handicapped in any effort to rule on subtle

evidentiary questions outside a factual context. This is particularly true

under Rule 609(a)(1), which directs the court to weigh the probative value

of a prior conviction against the prejudicial effect to the defendant. To

perform this balancing, the court must know the precise nature of the

defendant's testimony, which is unknowable when, as here, the defendant does not testify.

Any possible harm flowing from a district court's in limine ruling permitting impeachment by a prior conviction is wholly speculative. The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling. On a record such as here, it would be a matter of conjecture whether the District Court would have allowed the Government to attack petitioner's credibility at trial by means of the prior conviction.

*Luce* at 41-42.

{¶ 54} Because appellant did not testify, whether the trial could would have ultimately permitted impeachment with his prior conviction is "unknowable." Accordingly, we find that appellant failed to preserve this issue, and his third assignment of error is not well-taken.

### C. Lack of Specific Dates in the Indictment

{¶ 55} In his fourth assignment of error, appellant argues the rape charges were missing dates as a fundamental element of the offenses, and the lack of specific dates deprived him of his right to an indictment setting forth the facts constituting the offenses

charged. Appellant does not otherwise challenge the sufficiency or weight of the evidence admitted at trial, aside from his claims that R.Y. was not a credible witness.

{¶ 56} Appellant misstates the law concerning required information in the indictment. An indictment need not include specific dates, but must only contain sufficient information indicating "the offense was committed at some time prior to the time of finding of the indictment[.]" *State v. Ambrosia*, 67 Ohio App.3d 552, 556, 587 N.E.2d 892 (6th Dist.1990), quoting R.C. 2941.03(E). "An indictment is valid even if it states the time imperfectly or omits the time where the time is not an essential element of the offense." *Ambrosia* at 556, citing R.C. 2941.08(B) and (C).

{¶ 57} In this case, appellant was charged with three counts of rape of a child under the age of 13, pursuant to R.C. 2907.02(A)(1)(b) and (B), and three counts of rape pursuant to R.C. 2907.02(A)(2) and (B). The charges indicated the span of time in which the offenses occurred: Counts 1-3 during the time period in which R.Y. was under the age of 13, between November 5, 2016 and November 4, 2017; and Counts 4-6 during the time period after R.Y. turned 13, between December 26, 2017 and January 31, 2018 for Counts 4 and 5, and between September 17, 2018 and September 21, 2018 for Count 6.

{¶ 58} The indictment serves as notice to an accused of the "nature and cause of the accusation." *State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985), citing Article I, Section 10 of the Ohio Constitution and the Sixth Amendment of the United States Constitution. Where more specific information is sought, an accused may request that information in a bill of particulars, but "[a] bill of particulars is not designed to

24.

provide the accused with specification of evidence or to serve as a substitute for discovery." *Sellards* at 171, citing *State v. Wilson*, 29 Ohio St.2d 203, 206, 280 N.E.2d 915 (1972).

{¶ 59} The precise date of each offense was not a required element for rape, with the state only required to establish that appellant committed the rape in Counts 1-3 prior to R.Y.'s thirteenth birthday and the rape in Counts 4-6 after R.Y.'s thirteenth birthday. Appellant does not argue that he requested more specific dates in a bill of particulars and the state failed to provide necessary information. "A trial court must consider two questions when a defendant requests specific dates, times or places on a bill of particulars: whether the state possesses the specific information requested by the accused, and whether this information is material to the defendant's ability to prepare and present a defense." *State v. Lawrinson*, 49 Ohio St.3d 238, 239, 551 N.E.2d 1261 (1990). In this case, appellant asserts no challenge based on any inability to defend against the charges.

{¶ 60} The exact date and time were also not elements of each rape charge. Contrary to appellant's argument, to convict, the jury only needed to find that R.Y.'s testimony was true in order to find appellant guilty of raping her intermittently over the period from approximately November 5, 2016 to September 21, 2018, as indicated in the indictment. *Ambrosia*, 67 Ohio App.3d at 561, 587 N.E.2d 892. The jury considered the evidence and found appellant guilty of the indicted charges. Accordingly, we find appellant's fourth assignment of error not well-taken.

### D. "Confusion" in the Aggregate Sentence Calculation

{¶ 61} In his fifth and final assignment of error, appellant argues the trial court failed to "rule on count 5" and omitted any discussion of whether Count 5 would be served concurrently to the rest of the sentence, or consecutively to other counts, and as a result, appellant is unable to calculate his aggregate sentence. Appellant argues a remand is necessary for proper imposition of sentence as to Count 5, but does not otherwise challenge the trial court's imposition of sentence based on any discernible legal argument under the sentencing statutes.[4]

{¶ 62} The trial court sentenced appellant to a term of 25 years to life in prison as to each of Counts 1, 2, and 3. The trial court then imposed a prison term of ten years for each of Counts 4, 5, and 6. Contrary to appellant's claim, moreover, the trial court specifically addressed Count 5 in imposing sentence, stating, "In Count 5, Rape, a violation of the Revised Code 2907.02(A)(2) and (B), a felony of the first degree, the Court's going to sentence Defend—Defendant to 10 years."

---

[4] Instead of arguing sentencing error, appellant reiterates his argument regarding Evid.R. 404(B) and 609, and otherwise criticizes the trial court's knowledge of the particular sentencing provisions applicable to his eventual release.

{¶ 63} The trial court then ordered:

The prison terms imposed in Counts 1 and 2 are to be concurrent with each other. Count 3 is to be consecutive to Counts 1 and 2. The prison terms imposed in Count 4 and 6 are to be concurrent with each other, but consecutive to Counts 1 and 2 – amicably [sic.].

In the judgment entry of sentencing, the language mirrored the transcript, except for the trial court's determination of concurrent and consecutive sentences. In the written entry, the trial court ordered Counts 4 *through* 6 to be served concurrent to each other and consecutive to Counts 1 and 2.

{¶ 64} The calculation of the total sentence also differed, with the trial court accepting the prosecutor's calculation of 70 years to life, a clear mathematical error based on the sentences imposed. In the sentencing entry, the trial court indicated an aggregate term of 60 years to life, correcting the prosecutor's mathematical error, consistent with the record.

{¶ 65} Normally, we review felony sentences under R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. Appellant does not seek this type of review, however. Instead, appellant argues ambiguities regarding his sentence for Count 5 and the aggregate term imposed. As previously noted, the trial court imposed a ten-year prison term for Count 5, with the only discrepancy concerning whether this term was imposed concurrent or consecutive to the other prison terms.

27.

{¶ 66} It appears the trial court intended the ten-year term for Count 5 to run concurrently to the terms imposed in Counts 4 and 6, and consecutively to the terms imposed in Counts 1 and 2, but the transcript of the hearing indicates that the trial court imposed a consecutive term only as to the sentence for Counts 4 and 6 and the sentence for Counts 1 and 2. This ambiguity as to whether the sentence imposed for Count 5 should be served concurrently or consecutively to the other sentences must be resolved in appellant's favor as a concurrent term. *State v. Carr*, 167 Ohio App.3d 223, 2006-Ohio-3073, 854 N.E.2d 571, ¶ 4 (3d Dist.), citing *State v. Quinones*, 8th Dist. No. 83720, 2004-Ohio-4485; *Hamilton v. Adkins*, 10 Ohio App.3d 217, 461 N.E.2d 319 (12th Dist.1983).

{¶ 67} This ambiguity, moreover, does not change the correct calculation of appellant's aggregate prison sentence of 60 years. It is clear from the record that the trial court imposed an aggregate term of 50 years to life as to Counts 1, 2, and 3, and an aggregate term of 10 years as to Counts 4, 5, and 6, with 10 years to be served consecutively to term of 50 years to life. Although the prosecutor muddied the waters at the sentencing hearing with his inaccurate math, the record otherwise is clear, and we find no ambiguity.

{¶ 68} Accordingly, we find no basis to reverse and remand for a new sentencing hearing. Instead, the proper remedy is a nunc pro tunc entry to reflect the sentence imposed by the trial court at the sentencing hearing, ordering Count 5 to be served concurrently to all other counts and only Counts 4 and 6 to be served consecutively to Counts 1 and 2. *See State v. Dean*, 6th Dist. Lucas No. L-17-1274, 2019-Ohio-425, ¶ 28,

28.

citing *State v. Allen*, 6th Dist. Lucas No. L-14-1078, 2016-Ohio-2742, ¶ 29 ("A trial court may use a nunc pro tunc entry to correct mistakes in judgments, orders, and other parts of the record so the record speaks the truth."). We therefore find appellant's fifth and final assignment of error not well-taken, in part, as to the sentence imposed, and well-taken, in part, regarding the error in the sentencing entry in variance from the sentence pronounced on the record, and remand for correction with a nunc pro tunc judgment entry.

### III. Conclusion

{¶ 69} For the forgoing reasons, we affirm the judgment of the Sandusky County Court of Common Pleas, but remand the matter for a nunc pro tunc judgment entry to correct the error in the sentencing entry. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                           _____
                                                          JUDGE
Thomas J. Osowik, J.

Gene A. Zmuda, P.J.                         _____
CONCUR.                                                   JUDGE


                                            _____
                                                          JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.